MAC MASTER LAW PLLC
3363 N. Lakeharbor Lane
Boise, Idaho 83703
Telephone:  (208) 608-2235
emily@macmasterlaw.com
emacmaster07@gmail.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARMEN MOORE,<br><br>    Plaintiff,<br><br>vs.<br><br>CANYON COUNTY SHERIFF'S OFFICE, a public entity, CANYON COUNTY, a body politic and corporate, SHERIFF KIERAN DONAHUE, in his individual and official capacities, JACE THOMPSON, and RUSSELL DONNELLY, and DOES 1-100, unknown individuals and/or entities,<br><br>    Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**Jury Trial Demanded** |

Plaintiff Carmen Moore, formerly Carmen Pagan, ("Deputy Moore" or Plaintiff") brings this Complaint and Demand for Jury Trial ("Complaint") and alleges against Defendants Canyon County, Canyon County Sheriff's Office, Canyon County Sheriff Kieran Donahue, Sergeant Jace Thompson and Lieutenant Russell Donnelly (collectively referred to as "Defendants") as follows:

## NATURE OF THIS ACTION

1. This employment action is brought by Deputy Moore against the Defendants pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. (the "FMLA"), the Providing Urgent Maternal Protections for

**COMPLAINT AND DEMAND FOR JURY TRIAL- 1**

Nursing Mothers Act, 29 U.S.C. § 218d (the "PUMP" Act), and 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2.    Defendants subjected Deputy Moore to unlawful employment discrimination and/or retaliation on the basis of a record of disability and/or sex, her exercise of statutory rights to reasonable accommodation, leaves of absence, pumping breastmilk at work for her infant, and/or to complain about or otherwise oppose violations of the above-identified statutes, and/or Defendants failed to comply with the compensation provisions of the PUMP Act.

3.    Deputy Moore seeks all available back pay, front pay, damages, liquidated damages, punitive damages, equitable relief, attorneys' fees, costs, and interest.

## PARTIES

4.    Deputy Moore is an adult, a female, a citizen of the United States of America and, at all times relevant herein, a resident of Canyon County in the State of Idaho.

5.    Defendant Canyon County Sheriff's Office is a public law enforcement agency operating pursuant to Idaho Code § 31-2201, *et seq.* in Canyon County, which is a political subdivision of the  State of Idaho and a body politic and corporate subject to suit pursuant to Idaho Code § 31-601. Defendant Canyon County Sheriff's Office and Defendant Canyon County are collectively referred to hereinafter as the "CCSO."

6.    On information and belief, Defendant Sheriff Kieran Donahue ("Defendant Sheriff Donahue") is a resident of Canyon County, Idaho. Defendant Sheriff Donahue was the Sheriff of Canyon County, Idaho at all times relevant herein and had supervisory authority over Defendants Canyon County Sheriff's Office, Sergeant Jace Thompson and Lieutenant Russell Donnelly. For purposes of 42 U.S.C. §§ 1983 and 1988, Defendant Sheriff Donahue is sued in his individual capacity and in his official capacity as the Sheriff of Canyon County, Idaho.

COMPLAINT AND DEMAND FOR JURY TRIAL- 2

7. Defendant Sergeant Jace Thompson was a CCSO employee at all relevant times herein, and Deputy Moore worked under his supervision in or about February 2023 and thereafter. On information and belief, Defendant Sgt. Thompson resides in the State of Idaho.

8. Defendant Lieutenant Russell Donnelly was a CCSO employee at all relevant times herein and one of Deputy Moore's supervisors in the CCSO chain of command. On information and belief, Defendant Lt. Donnelly resides in the State of Idaho.

9. At all times relevant herein, the acts or omissions of Defendants Sheriff Donahue, Sgt. Thompson, and Lt. Donnelly's actions identified herein took place within the course and scope of their CCSO employment or duties.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction under the provisions of 28 U.S.C. §§ 1331 and 1343 with respect to Deputy Moore's claims arising under federal law.

11. Venue is proper with this Court under 28 U.S. Code § 1391 as Defendants reside within and/or the events or omissions giving rise to Deputy Moore's claims occurred within this Court's judicial district, the State of Idaho.

## GENERAL ALLEGATIONS

### *Deputy Moore's Hiring and Early Employment as a CCSO Sheriff Deputy*

12. CCSO employed 15 or more employees at all times relevant herein.

13. On information and belief, at all times relevant herein, one or more programs or activities receiving Federal financial assistance were operated by CCSO.

14. CCSO is an employer governed the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., the FMLA, at 29 C.F.R. § 825.104, and the PUMP Act, at 29 U.S.C. § 203.

15. The Canyon County Detention Center (the "Jail") has been located in Canyon County, Idaho at all relevant times herein.

COMPLAINT AND DEMAND FOR JURY TRIAL- 3

16.    CCSO has operated the Jail under Defendant Sheriff Donahue's authority pursuant to Idaho Code § 31-2202(6) at all relevant times herein.

17.    On or about June 29, 2020, Deputy Moore was hired as a CCSO Sheriff Deputy assigned to the Jail, where she worked throughout her employment thereafter.

18.    As a CCSO employee, Deputy Moore reported to supervisors in a chain of command of Corporals, Sergeants, Lieutenants, the Captain, the Chief Deputy, and Sheriff Donahue.

19.    Sgt. Thompson, Lt. Donnelly, and Sheriff Donahue were in the chain of command of Deputy Moore's supervisors.

20.    In or about April 2022, Deputy Moore suffered a work-related shoulder injury during a training for cell extractions at the Jail, which limited her in one or more major life activities including working, lifting, carrying, driving, sleeping, dressing, and/or other self-care.

21.    Due to physical limitations arising from this shoulder injury, Deputy Moore was assigned to light duty at the Jail.

22.    As a result of her injury in or about April 2022, Deputy Moore underwent shoulder surgery on or about December 14, 2022.

23.    Deputy Moore's recovery from the shoulder injury and surgery required her to take an FMLA leave of absence from work for her serious health condition, from on or about December 14, 2022 through on or about February 14, 2023.

24.    On or about February 15, 2023, Deputy Moore returned from this protected FMLA leave of absence to work a light duty assignment at the Jail.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 4**

25.     Deputy Moore's assignment to post-surgery light duty was due to continuing physical restrictions from her shoulder injury, which limited her in one or more major life activities including working, lifting, carrying, driving, sleeping, dressing, and/or other self-care.

26.     Upon returning to work on or about February 15, 2023, Deputy Moore was assigned to work on Sgt. Thompson's team at the Jail.

27.     On or about June 6, 2023, Deputy Moore was released by her medical provider from light duty and she returned to full duty at the Jail.

28.     Deputy Moore has a record of disability from this work-related shoulder injury, of which Defendants were aware.

### *Deputy Moore's Pregnancy and Childbirth*

29.     Soon after her release to full duty, Deputy Moore learned that she was pregnant in or about July 2023.

30.     Deputy Moore struggled with severe morning sickness throughout the first trimester of her pregnancy, often multiple times a day and including when she was at work.

31.     Additionally, Deputy Moore experienced exacerbated migraine headaches throughout her pregnancy including when at work. These migraine headaches substantially limited her in one or more major life activities including working, seeing, concentrating, thinking, communicating, and/or driving.

32.     On or about July 19, 2023, Deputy Moore informed CCSO supervisors Corporal Travis Houde and Sgt. Thompson that she was pregnant.

33.     On or about July 31, 2023, Deputy Moore informed CCSO supervisor Sergeant Jordan Hammond, the Shift Supervisor for her work shift, that she was pregnant and might need to run to the bathroom during work in the event of morning sickness.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 5**

34.    On or about August 1, 2023, Deputy Moore experienced morning sickness before work and she notified Shift Supervisor Sgt. Hammond that she was having a rough morning and was running behind for work.

35.    On or about August 3, 2023, Deputy Moore submitted a request to CCSO Human Resources staff Cindy Lorta for a light duty assignment due to pregnancy.

36.    On or about August 4, 2023, CCSO supervisors Sgt. Thompson, Cpl. Houde and Corporal Catriona Rost met with Deputy Moore and issued her a written "Performance Review," dated August 3, 2023, for arriving late to work on August 1, 2023.

37.    In this meeting, Deputy Moore explained that she was unable to leave for work on time on or about August 1, 2023 due to uncontrollable morning sickness and that she had informed the Shift Supervisor, Sgt. Hammond, that she would be late.

38.    After this meeting, Deputy Moore called Lt. Donnelly and explained that she was late to work on or about August 1, 2023 due to morning sickness but had informed the Shift Supervisor that she was running behind and would be late, and/or Lt. Donnelly responded by asking how many occurrences they would have to allow.

39.    Deputy Moore wrote in the "Employee's Comments/Goals" section of the Performance Review, dated on or about August 3, 2023, that she was pregnant, that she became unexpectedly sick while getting ready for work on August 1, 2023, and that she communicated to the Shift Supervisor as soon as she was able that she was running a few minutes behind.

40.    CCSO did not rescind this negative Performance Review despite being notified that the reason for Deputy Moore's being tardy was a medical condition related to pregnancy.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 6**

41.     Deputy Moore submitted a "Request for Reasonable Accommodation" form to CCSO, dated August 14, 2023, in which she requested a reassignment to "Light duty w[ith] no inmate contact" due to her pregnancy and safety risks related to inmate contact.

42.     In or about August 2023, Deputy Moore began CCSO's process to request an FMLA leave of absence in advance of her anticipated childbirth in March 2024.

43.     On or about September 15, 2023, CCSO assigned Deputy Moore to light duty working in the Control Room of Pod 6 at the Jail or in the Jail's Main Control Room.

44.     Supervisors reporting to, or working with, Sgt. Thompson assigned security staff to various Jail posts on a daily basis, and they determined whether Deputy Moore was assigned to the Pod 6 Control Room or the Jail's Main Control Room during her work shifts.

45.     Pod 6 was a temporary jail system made up of multiple trailers, in which CCSO housed female inmates, including  minimum, medium and maximum custody inmates, as well as pre-arraignment inmates.

46.     CCSO reports on its website that  Pod 6 "presented safety concerns, including issues related to contraband, its design layout, and the overall safety and security of both inmates and deputies."   https://www.canyoncounty.id.gov/canyon-county-board-of-commissioners-exploring-plans-for-a-new-womens-jail-facility/ (last visited September 11, 2025).

47.     A Canyon County official has described Pod 6 of the Jail as a "tin can," an "absolute joke" and as having "hundreds of shortcomings." Haadiya Tariq, *Following closure of Pod 6, Canyon County seeks new jail,* Idaho Press (March 24, 2025) https://www.idahopress.com/news/local/following-closure-of-pod-6-canyon-county-seeks-new-jail/article_67cacaba-b765-423a-9f75-a49906161e8f.html (last visited September 11, 2025).

48.     CCSO law enforcement officers are trained to keep their personal lives private.

49.    However, Defendants' assignment of Deputy Moore to the Pod 6 Control station allowed inmates to see that she was obviously pregnant.

50.    Also, Pod 6 inmates had direct physical access to Deputy Moore while she was pregnant, when they were in the Pod 6 hallways at the same time.

51.    Ms. Lorta issued a letter to Deputy Moore, dated September 20, 2023, pursuant to which CCSO designated Deputy Moore's leave of absence to begin on March 13, 2024 as FMLA leave for the birth of a child.

52.    On or about September 26, 2023, Deputy Moore complained to Ms. Lorta that assignment to the Pod 6 Control station was inadequate to ensure "no inmate contact" in a manner consistent with her request for a reasonable pregnancy accommodation.

53.    On or about September 27, 2023, Deputy Moore sent an e-mail to Ms. Lorta in which Deputy Moore again raised her concern about contact with inmates in Pod 6, and she asked for a "solution quickly that does not continue to put my baby at risk."

54.    Ms. Lorta responded in an e-mail to Deputy Moore that day, in which she stated that she had spoken with Lt. Donnelly and that the light duty assignment was sufficient because it "prevents you from having inmate contact." Ms. Lorta offered no other option for accommodation.

55.    Deputy Moore replied in another e-mail to Ms. Lorta, dated September 27, 2023, in which she informed Ms. Lorta that there was a high volume of inmate movement in Pod 6 during the days, that her pregnancy was obvious, and that she was exposed to close proximity with inmates. Deputy Moore reiterated that her request for an accommodation during pregnancy was for "zero, not limited inmate contact," which a temporary reassignment to the Jail's Main Control Room would provide, whereas the Pod 6 Control Room did not. Deputy Moore also informed

Ms. Lorta that she was e-mailing Ms. Lorta in follow up to their September 26, 2023 discussion but that she would be happy to speak with Lt. Donnelly.

56.	However, throughout the remainder of her pregnancy, Defendants failed to engage in an interactive process with Deputy Moore to discuss options for a reasonable accommodation.

57.	Defendants denied Deputy Moore's request for a temporary accommodation to Deputy Moore in the Jail's Main Control Room.

58.	Throughout the remainder of her pregnancy, Defendants continued shift assignments of Deputy Moore to Pod 6 instead of assignments only to posts with no inmate contact.

59.	While Deputy Moore remained pregnant, Defendants assigned other employees to the Jail's Main Control Room instead of her including, for example and without limitation, when other employees were working overtime shifts and/or had a work injury.

60.	In or about November 2023, Deputy Moore became aware that CCSO employees were making negative statements about her for raising safety concerns in regard to her pregnancy.

61.	On or about March 7, 2024, on her physician's recommendation, Deputy Moore was no longer able to continue working due to her advanced state of pregnancy.

62.	For this reason and the birth of her child, Deputy Moore took a leave of absence under CCSO's FMLA policy beginning on or about March 10, 2024.

63.	Deputy Moore gave birth to her child on March 14, 2024.

64.	Due to medical reasons, Deputy Moore required an extended leave of absence through on or about June 30, 2024 in order to safely return to law enforcement work at the Jail.

65.	The extended leave of absence depleted the accrued paid sick and vacation leave balances that Deputy Moore had worked over the years to earn as a CCSO employee benefit.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 9**

66.    Upon receiving a medical release from her health care provider, Deputy Moore returned to work on full-time duty on or about July 1, 2024.

### Defendants' Interference with, and Retaliation Against Deputy Moore for Taking, Lactation Breaks.

67.    Upon returning to work, Deputy Moore exercised her legal rights to take lactation breaks to pump and store breast milk for her newborn.

68.    Upon her return to work, CCSO co-workers complained that Deputy Moore's pumping breaks interfered with Jail operations including pat downs of inmates.

69.    CCSO employees questioned Deputy Moore's commitment to working in law enforcement, including by commenting that they had started making bets about whether she would be coming back to work.

70.    The negative, stereotypical comments about Deputy Moore targeted her on the basis of her pregnancy and her female sex, and they were unwelcome.

71.    Section 8.14 in the Canyon County Employee Handbook, entitled "Rest Hours and Lunch Periods," grants supervisors the discretion to grant employees paid rest periods during the workday that are taken away from the employee's work station, stating in part:

> Rest periods are a privilege and at the discretion of an employee's supervisor and status of his/her work load. At no time should the work of an office be delayed or interfered with by the exercise of the rest period privilege. The EO or DA may, at their discretion, permit rest periods to be taken in an area other than the work station. Rest periods are typically taken mid-shift before a lunch break and mid-shift after a lunch break. Rest periods may not be "saved" for future use or consolidated and added together or used to adjust his/her work schedule.

72.    However, Section 2.10 in the Canyon County Employee Handbook, entitled "Lactation Policy/Nursing Mothers' Policy," limits paid breaks for lactation to a mere 15 minutes and further provides, "Breaks of more than 15 minutes in length will be unpaid," stating in part:

**COMPLAINT AND DEMAND FOR JURY TRIAL- 10**

> For up to one year after the child's birth, any employee who is breastfeeding her child will be provided reasonable break times to express breast milk for her newborn. A reasonable break time is defined as enough time for the mother to lactate and is not limited to a traditional 15-minute break. Breaks of more than 15 minutes in length will be unpaid, and the employee should indicate this break period on her time record.

73. CCSO's policies in Sections 8.14 and 2.10 of the Canyon County Employee Handbook facially discriminate against pregnant women, including by allowing supervisors discretion to grant male employees paid rest periods during the workday with no express maximum limit of time, while imposing a limit of 15 minutes paid work time upon female employees for lactation breaks.

74. On information and belief, Defendants permitted male employees to use paid work time in excess of 15 minutes including, for example and without limitation, for smoke breaks, to leave the Jail to pick up food, and/or for other personal reasons.

75. However, Defendants prevented Deputy Moore from taking more than 15 minutes of paid regular work time for each of her lactation breaks.

76. Also, while Section 2.10 of the Canyon County Employee Handbook provides for unpaid time off when lactation breaks exceed 15 minutes, Defendants insisted that Deputy Moore use accrued sick and vacation leave balances for lactation breaks exceeding 15 minutes.

77. Defendants' insistence that Deputy Moore use accrued paid leave for lactation breaks exceeding 15 minutes kept her paid sick and vacation leave balances low and/or entirely depleted, making paid leave unavailable for other illness, personal, family or vacation purposes.

78. Each lactation break generally took more than 15 minutes for Deputy Moore, and she generally needed to take three lactation breaks during the workday.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 11**

79.     To take a lactation break, Deputy Moore had to walk from her work station to a lactation room housed elsewhere on CCSO property, often in another building.

80.     Upon arriving at the lactation room, Deputy Moore had to set up the breast pump equipment, doff (take off) her CCSO security equipment and uniform, pump and then, afterwards, don (put back on) her CCSO uniform and security equipment again, clean her breast pump equipment and store it, and walk back to her work station.

81.     While on CCSO property during her work shifts, Deputy Moore was required to be available to respond to Jail emergencies, radio traffic and other emergent or non-emergent needs.

82.     Deputy Moore was not completely relieved from CCSO job duties during her lactation breaks.

83.     During lactation breaks, Deputy Moore kept her CCSO duty belt, firearm, radio, and other use of force and security equipment with her.

84.     During lactation breaks, Deputy Moore kept her radio on, and she monitored radio traffic and/or responded to radio calls from other Jail staff.

85.     While on lactation breaks, Deputy Moore was required, permitted, or suffered to work, including to respond, or to be available to respond, to emergencies, radio traffic and other emergent or non-emergent needs at the Jail.

86.     Deputy Moore was interrupted while she was pumping, by other employees knocking on the door to ask how long she would be because they had to access inmate property stored in the lactation room, and Deputy Moore had to respond to their inquiries.

87.     Defendants micromanaged Deputy Moore's lactation breaks including by monitoring the minutes taken by her on these breaks.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 12**

88. On information and belief, Defendants did not micromanage by minutes the paid breaks taken by male CCSO employees during their work shifts.

89. In or about early July 2024, Deputy Moore called out from work after her infant was awake throughout the night before, indicating that he might be ill, and she reported this absence to her CCSO supervisor.

90. Sgt. Thompson and Lt. Donnelly met with Deputy Moore and issued her a written Performance Review, dated July 8, 2024, reprimanding her for an alleged "abuse of the sick leave policy" for calling out without a paid vacation or sick leave balance for this absence.

91. Not long after returning to work following childbirth, in or about July 2024 Deputy Moore faced an unexpected health crisis requiring immediate medical attention.

92. On or about July 12, 2024, Deputy Moore informed her CCSO supervisors that she had to undergo an unexpected, emergent medical procedure scheduled for July 16, 2024.

93. Sgt. Thompson asked Deputy Moore to reschedule this medical procedure.

94. In response, Deputy Moore was compelled to disclose to Sgt. Thompson confidentially the gender-sensitive nature of the emergent procedure and she explained that, for medical reasons, it could not wait and that she would have a one-day weight restriction afterwards.

95. In reply, Sgt. Thompson directed Deputy Moore that she could not have this time off without written permission from Sheriff Donahue and that the one-day weight restriction would require her to move to another team.

96. In an e-mail sent to Sheriff Donahue through the CCSO chain of command, dated July 12, 2024, Deputy Moore requested time off for this medical procedure and two days of unpaid leave to avoid the threatened transfer to another team due to a single-day weight restriction.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 13**

97.    The Sheriff's decision permitting time off was not granted until on or about July 15, 2024, a day before Deputy Moore's medical procedure was scheduled to take place.

98.    Defendants scheduled a physical defensive tactics training class to take place on or about August 1, 2024, which was a date outside of Deputy Moore's normal work schedule.

99.    In conversations on or about July 30 and 31, 2024, Deputy Moore informed Corporal Hayden Stauffer that she was having difficulty finding childcare for her regularly scheduled day off, as necessary for her to attend this training class.

100.    On or about July 31, 2024, Sgt. Thompson directed Deputy Moore to attend the training even if she had to bring her newborn to it.

101.    Deputy Moore was concerned that she could not safely bring her baby to the physical defensive tactics training, where hands-on techniques for inmate control were practiced and where the lactation room for nursing was in a Jail building in which inmates were escorted.

102.    On or about July 31, 2024, Deputy Moore met with Sgt. Thompson and informed him that she was not comfortable bringing her baby to the training, and she asked for consideration of other ways to fulfill the training hours. However, Sgt. Thompson offered no viable options.

103.    Deputy Moore did not attend the training held on or about August 1, 2024 because she was unable to secure child care for her baby that day.

104.    On or about August 5, 2024, Sgt. Thompson and Cpl. Stauffer issued a written Performance Review to Deputy Moore, for alleged insubordination in missing the training on or about August 1, 2024 and for allegedly calling out sick on August 3, 2024 without a balance of paid sick or vacation leave.

105.    In the Employee's Comments/Goals section of this Performance Review, Deputy Moore again stated her objections to Sgt. Thompson's direction to bring her baby to the defensive

**COMPLAINT AND DEMAND FOR JURY TRIAL- 14**

tactics training and to the absence of a safe facility in the Jail for breastfeeding a baby. Deputy Moore also complained about unequal treatment in her employment after her 2022 shoulder injury.

106.    On information and belief, Defendants have permitted male CCSO Sheriff Deputies to miss CCSO trainings due to personal reasons.

107.    In a meeting held on or about August 12, 2024, Sgt. Thompson and Captain Harold (Bill) Patchett put Deputy Moore on a twelve (12) month written performance improvement plan, dated August 6, 2024, ("PIP") and instructed her that any more unpaid sick time had to be approved by Sheriff Donahue.

108.    After the meeting on or about August 12, 2024, Deputy Moore complained to Captain Patchett about Sgt. Thompson sharing her confidential medical information with another male supervisor, Cpl. Stauffer, regarding the gender-related medical procedure she underwent on or about July 16, 2024, and about being written up for pregnancy-related reasons.

109.    However, Captain Patchett offered no remedy or other options to address and resolve Deputy Moore's complaints.

110.    Deputy Moore attended the defensive tactics training at a make-up session later in or about August 2024 but, when it became necessary for her to take a lactation break, a supervisor granted her permission to leave early instead of taking a break and then returning.

### *Deputy Moore's Additional Complaints to CCSO Human Resources Staff and the Termination of Her Employment*

111.    Policy 328 in CCSO Policy Manual, entitled "Discriminatory Harassment," prohibits unlawful employment-related discrimination, provides that complaints may be made to CCSO Human Resources staff, and mandates that "all complaints of discrimination, retaliation, or

harassment shall be fully documented, and promptly and thoroughly investigated" and that the "complainant and/or victim will be notified in writing of the disposition of the investigation."

112.    On or about August 16, 2024, Deputy Moore complained to Ms. Lorta in a meeting that she was being targeted and harassed at work, including in regard to pregnancy and pumping breastmilk, and that she felt like she was walking on eggshells on Sgt. Thompson's team.

113.    Section 5.09 of the Canyon County Employee Handbook, entitled "Personal Leave of Absence," authorizes Sheriff Donahue the discretion to grant unpaid personal leaves of absence to employees who have completed 12 months of service and have no other leave available to them.

114.    On or about August 17, 2024, Deputy Moore e-mailed Sheriff Donahue to request leniency in taking future unpaid time off if needed, such as for the needs of her baby, until she was able to accrue paid sick leave again.

115.    On or about August 19, 2024, Sgt. Thompson met with Deputy Moore in a progress meeting for the PIP. In the written "Weekly Performance Evaluation" for this meeting, Sgt. Thompson reported that she "was on time and prepared for work each shift this week."

116.    In this same written Weekly Performance Evaluation, Sgt. Thompson evaluated Deputy Moore's lactation breaks in regard to her job performance, writing:

> In accordance with policy Deputy Pagan is currently taking an average of 3 lactation breaks per shift.
> After the first covered 15 minutes, these breaks averaged an additional 1.25 hours, daily.
> She is using her sick and vacation time to cover the additional time, until her balances are exhausted.
> Once her balances are exhausted, she takes leave without pay.
> Her vacation and sick leave balance remain zero with the extended time she is using each shift.

117.    On or about August 26, 2024, CCSO Chief Deputy Doug Hart sent an e-mail to Deputy Moore, which he cc'd to Sheriff Donahue, denying her request to Sheriff Donahue for unpaid leave.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 16**

118.    In this denial of her request, Defendants did not offer Deputy Moore any other alternatives for leave if needed while her paid leave balances remained depleted due to a prior pregnancy, childbirth and/or related medical conditions, and/or lactation breaks.

119.    On information and belief, CCSO supervisors participated in and/or allowed co-workers to spread rumors about Deputy Moore being lazy where, soon after she was released from light duty for a shoulder injury in 2023, she got pregnant and had to request light duty again.

120.    On or about August 30, 2024, Deputy Moore submitted to Ms. Lorta a written statement confirming her complaints. Within this written follow-up complaint, without limitation, Deputy Moore:

    a.  Complained about being subjected to sex, pregnancy and disability discrimination and harassment at the Jail;

    b.  Complained about retaliation against her for engaging in protected activities such as taking FMLA leave, requesting reasonable accommodations for disability and pregnancy, and pumping breastmilk at work;

    c.  Complained about not being completely relieved from duty during lactation breaks;

    d.  Complained about CCSO supervisors demanding that she use sick and vacation time for lactation breaks in excess of 15 minutes, explaining that this demand depleted her paid leave balances and thus made paid leave unavailable to cover other types of absences;

    e.  Informed CCSO of impacts of this wrongful conduct upon her mental health; and

**COMPLAINT AND DEMAND FOR JURY TRIAL- 17**

  f. Requested equality in expectations and disciplinary actions, a review of policy regarding lactation breaks to allow sick and vacation time to accrue, and removal of the PIP and the Performance Review based upon morning sickness from her personnel record.

121. On or about September 4, 2024, Ms. Lorta e-mailed Deputy Moore that her written complaint had been provided to CCSO's Human Resources Director ("HR Director") and that they would be in touch with her later about next steps.

122. However, the HR Director never reached out to Deputy Moore about her complaints, much less any investigation of her complaints.

123. On or about September 6, 2024, Deputy Moore e-mailed Ms. Lorta to seek health care resources due to emotional distress she was experiencing from the ongoing, unaddressed employment discrimination and harassment against her.

124. On or about September 10, 2024, Deputy Moore e-mailed Ms. Lorta to request an update on the status of the HR Director's pending response to her complaints.

125. On or about September 10, 2024, Ms. Lorta responded in an e-mail to Deputy Moore that the HR Director was still reviewing Deputy Moore's written statement and that Ms. Lorta would provide an update when she heard back from the HR Director.

126. But later that same day, on or about September 10, 2024, Sheriff Donahue issued Deputy Moore a Notice of Intent Separate, to terminate her employment.

127. The Notice of Intent to Separate alleged Deputy Moore's "attendance record" as the reason for termination, stating, in part:

**COMPLAINT AND DEMAND FOR JURY TRIAL- 18**

> This contemplated termination reflects the at-will nature of your employment relationship with Canyon County. I am not aware of any factual reason or circumstances that would prohibit at-will termination of your employment under any federal or state law or public policy. While no cause is required for this at-will termination, this decision is based on review of your attendance record, which has consistently not met the County's expectations. Despite our previous discussions and the support provided to address these concerns, there has been a continued pattern of unsatisfactory attendance.

128. A CCSO "good faith" hearing was held on or about September 13, 2024.

129. Deputy Moore was directed to attend this CCSO hearing without legal counsel, while CCSO was represented at the hearing by Chief Deputy Hart, Ms. Lorta, and Canyon County's legal counsel.

130. In a Termination Notice, dated September 17, 2024, Sheriff Donahue terminated Deputy Moore's employment with CCSO that same day.

131. On information and belief, Defendants did not conduct a prompt and adequate investigation of Deputy Moore's complaints of civil rights violations.

132. Defendants did not notify Deputy Moore of the disposition of any investigation of her complaints, including her written complaint submitted on or about August 30, 2024.

133. As a result of Defendants' misconduct, Deputy Moore has suffered economic and other compensatory damages, including without limitation, lost pay and benefits, future lost pay and benefits, emotional distress and other compensatory damages, and attorneys' fees and costs.

## FIRST CAUSE OF ACTION
### (Disparate Treatment/Record of Disability in Violation of the Rehabilitation Act of 1973, Against CCSO)

134. The allegations contained in paragraphs 1 through 133 of this Complaint are incorporated herein by reference, as if set forth again in full.

135. At all times relevant herein, Deputy Moore had a record of disability arising out of her shoulder injury and/or pregnancy migraine headaches, which substantially limited one or more of her major life activities as described above and of which Defendants were aware.

COMPLAINT AND DEMAND FOR JURY TRIAL- 19

136. At all times relevant herein, Deputy Moore was able to perform the essential functions of her CCSO job with reasonable accommodation when she was recovering from her 2022 shoulder injury and/or experiencing pregnancy migraine headaches.

137. At all times relevant herein, Deputy Moore satisfied the requisite skill, experience, education and other job-related qualifications for the position of Deputy Sheriff and was a qualified individual with a record of disability for purposes of the Rehabilitation Act of 1973.

138. CCSO treated Deputy Moore less favorably in the terms and conditions of her CCSO employment on the basis of her record of disability than CCSO treated similarly situated employees without a record of disability; and/or

139. CCSO took one or more adverse employment actions against Deputy Moore by:

a. Exposing Deputy Moore to safety risks of direct physical access with inmates during pregnancy by denying her a temporary reassignment outside of Pod 6;

b. Over-scrutinizing and/or intimidating Deputy Moore in her work performance including, but not limited to, by micromanaging her timely reporting to work, legitimate absences from work, and/or lactation breaks at work;

c. Ordering Deputy Moore to use accrued vacation and/or sick leave benefits for lactation breaks exceeding 15 minutes while permitting other CCSO employees to take paid personal breaks exceeding 15 minutes;

d. Issuing Performance Reviews, reprimands, warnings, and/or other disciplinary action against Deputy Moore, including: the Performance Review, dated August 3, 2023, for arriving to work late due to severe morning sickness; the Performance Review, dated July 8, 2024, for calling in absent when her infant was awake throughout the night indicating that he might be ill; and/or the Performance Review, dated August 5, 2024, for refusing to bring

COMPLAINT AND DEMAND FOR JURY TRIAL- 20

her infant to the Jail for a physical defensive tactics training class and an additional alleged absence without accrued paid leave available;

e. Denying Deputy Moore benefits of CCSO employment, including but not limited to, by specifically prohibiting her access to unpaid leave and/or prohibiting her from trading work shifts with co-workers;

f. Not investigating and/or providing adequate remedial action in response to Deputy Moore's complaints to CCSO supervisors and Human Resources staff about the wrongful treatment she was subjected to because of her record of disability; and/or

g. Terminating Deputy Moore's employment on or about September 17, 2024.

140. CCSO took one or more of these adverse employment actions against Deputy Moore because of her record of disability.

141. CCSO's actions were unlawful disability discrimination in violation of Deputy Moore's civil rights under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.

142. As a result of CCSO's unlawful actions, Deputy Moore has suffered, and continues to suffer, emotional distress and economic damages in an amount to be proven at a trial in this action.

143. Deputy Moore seeks all available damages against CCSO (Defendants Canyon County and Canyon County Sheriff's Office), including but not limited to, lost back pay and benefits, lost future pay and retirement and other benefits, out of pocket costs, emotional distress and other compensatory damages, available equitable remedies, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the Rehabilitation Act of 1973, Against CCSO)

144. The allegations contained in paragraphs 1 through 143 of this Complaint are incorporated herein by reference, as if set forth again in full.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 21**

145.    At all times relevant herein, Deputy Moore had a record of disability arising out of her shoulder injury and/or pregnancy migraine headaches, which substantially limited one or more of her major life activities as described above and of which Defendants were aware.

146.    At all times relevant herein, Deputy Moore was a qualified individual with a record of disability for purposes of the Rehabilitation Act of 1973.

147.    Deputy Moore engaged in one or more protected activities by requesting, using or otherwise exercising legal rights to reasonable accommodation for a disability; and/or

148.    Deputy Moore engaged in one or more protected activities by complaining about or opposing unlawful employment discrimination based upon a record of disability, including but not limited to her written complaint submitted to CCSO on or about August 30, 2024.

149.    CCSO took one or more adverse employment actions against Deputy Moore by:

a.    Exposing Deputy Moore to safety risks of direct physical access with inmates during pregnancy by denying her a temporary reassignment outside of Pod 6;

b.    Over-scrutinizing and/or intimidating Deputy Moore in her work performance including, but not limited to, by micromanaging her timely reporting to work, legitimate absences from work, and/or lactation breaks at work;

c.    Ordering Deputy Moore to use accrued vacation and/or sick leave benefits for lactation breaks exceeding 15 minutes while permitting other CCSO employees to take paid personal breaks exceeding 15 minutes;

d.    Issuing Performance Reviews, reprimands, warnings, and/or other disciplinary action against Deputy Moore, including: the Performance Review, dated August 3, 2023, for arriving to work late due to severe morning sickness; the Performance Review, dated July 8, 2024, for calling in absent when her infant was awake throughout the night indicating

**COMPLAINT AND DEMAND FOR JURY TRIAL- 22**

that he might be ill; and/or the Performance Review, dated August 5, 2024, for refusing to bring her infant to the Jail for a physical defensive tactics training class and an additional alleged absence without accrued paid leave available;

e.      Denying Deputy Moore benefits of CCSO employment, including but not limited to, by specifically prohibiting her access to unpaid leave and/or prohibiting her from trading work shifts with co-workers;

f.      Not investigating and/or providing adequate remedial action in response to Deputy Moore's complaints to CCSO supervisors and Human Resources staff about the wrongful treatment she was subjected to because of her record of disability; and/or

g.      Terminating Deputy Moore's employment on or about September 17, 2024.

150.   There is a causal connection between one or more of Deputy Moore's protected activities and CCSO's adverse employment actions taken against her.

151.   CCSO's actions were unlawful retaliation in violation of Deputy Moore's civil rights under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.

152.   As a result of CCSO's unlawful actions, Deputy Moore has suffered, and continues to suffer, emotional distress and economic damages in an amount to be proven at a trial in this action.

153.   Deputy Moore seeks all available damages against CCSO (Defendants Canyon County and Canyon County Sheriff's Office), including but not limited to, lost back pay and benefits, lost future pay and retirement and other benefits, out of pocket costs, emotional distress and other compensatory damages, available equitable remedies, and attorneys' fees and costs.

154.   Deputy Moore also seeks punitive damages available under federal law against CCSO (Defendants Canyon County and the Canyon County Sheriff's Office) because their actions

COMPLAINT AND DEMAND FOR JURY TRIAL- 23

were taken with malice or in reckless disregard of Deputy Moore's civil rights.

### THIRD CAUSE OF ACTION
**(Retaliation in Violation of the FMLA, Against All Defendants)**

155. The allegations contained in paragraphs 1 through 154 of this Complaint are incorporated herein by reference, as if set forth again in full.

156. Deputy Moore engaged in one or more protected activities under the FMLA, including one or more of the following.

157. Deputy Moore exercised her legal right to take protected FMLA leave in 2022 for a serious health condition arising out of a work-related shoulder injury; and/or

158. Deputy Moore exercised her legal right to take protected FMLA leave in 2024 for the birth of her child; and/or

159. Deputy Moore opposed adverse employment actions taken against her by CCSO, by complaining to CCSO supervisors and/or Human Resources staff about retaliation against her for exercising FMLA rights.

160. CCSO took one or more adverse employment actions against Deputy Moore by:

a. Exposing Deputy Moore to safety risks of direct physical access with inmates during pregnancy by denying her a temporary reassignment outside of Pod 6;

b. Over-scrutinizing and/or intimidating Deputy Moore in her work performance including, but not limited to, by micromanaging her timely reporting to work, legitimate absences from work, and/or lactation breaks at work;

c. Ordering Deputy Moore to use her accrued vacation and/or sick leave benefits for lactation breaks exceeding 15 minutes while permitting other CCSO employees to take paid personal breaks exceeding 15 minutes;

**COMPLAINT AND DEMAND FOR JURY TRIAL- 24**

d.     Issuing Performance Reviews, reprimands, warnings, and/or other disciplinary action against Deputy Moore, including: the Performance Review, dated August 3, 2023, for arriving to work late due to severe morning sickness; the Performance Review, dated July 8, 2024, for calling in absent when her infant was awake throughout the night indicating that he might be ill; and/or the Performance Review, dated August 5, 2024, for refusing to bring her infant to the Jail for a physical defensive tactics training class and an additional alleged absence without accrued paid leave available;

e.     Denying Deputy Moore benefits of CCSO employment, including but not limited to, by specifically prohibiting her access to unpaid leave and/or prohibiting her from trading work shifts with co-workers;

f.     Not investigating and/or providing adequate remedial action in response to Deputy Moore's complaints to CCSO supervisors and Human Resources staff about wrongful treatment she was subjected to for exercising legal rights under the FMLA; and/or

g.     Terminating Deputy Moore's employment on or about September 17, 2024.

161.   There is a causal connection between one or more of Deputy Moore's protected activities under the FMLA and Defendants' adverse employment actions taken against her.

162.   Defendants' adverse actions against Deputy Moore were unlawful retaliation in violation of the FMLA, 29 U.S.C. § 2601, et seq.

163.   CCSO is responsible for one or more of the violations of Deputy Moore's rights under the FMLA; and/or

164.   Sheriff Donahue, Lt. Donnelly and/or Sgt Thompson, acted, directly or indirectly, in the interest of CCSO, and/or they exercised supervisory authority over Deputy Moore, such that they are responsible in whole or in part for the violation of Deputy Moore's rights under the FMLA.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 25**

165.    As a result of Defendants' violation(s) of the FMLA, Deputy Moore has suffered, and continues to suffer, economic and/or other compensatory damages in an amount to be proven at a trial in this action.

166.    Deputy Moore seeks all available damages against Defendants, including but not limited to, lost back pay and benefits, lost future pay and retirement and other benefits, out of pocket costs and other compensatory damages, liquidated damages, available equitable remedies, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Violation of the PUMP Act, Against All Defendants)

167.    The allegations contained in paragraphs 1 through 166 of this Complaint are incorporated herein by reference, as if set forth again in full.

168.    The PUMP Act, 29 U.S.C. 218d,  was enacted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, et. seq., to provide legal protections to new mothers who breastfeed their babies during the first year of life. The FLSA is incorporated herein by this reference.

169.    The PUMP Act required CCSO to provide reasonable break time to Deputy Moore to express breast milk during her employment for her nursing baby.

170.    The PUMP Act prohibited retaliation against Deputy Moore for complaining about violations of the PUMP Act and/or violations of FLSA provisions applicable to the PUMP Act.

171.    Defendants violated the PUMP Act by engaging in one or more of the following actions.

172.    CCSO failed to compensate Deputy Moore for lactation breaks when she was not completely relieved from work duties during such breaks; and/or

**COMPLAINT AND DEMAND FOR JURY TRIAL- 26**

173.    Defendants denied Deputy Moore compensation by paid work time for lactation breaks exceeding 15 minutes in length but compensated other employees by paid work time for rest periods exceeding 15 minutes; and/or

174.    Defendants required Deputy Moore to expend accrued sick or vacation time for time on lactation breaks that exceeded 15 minutes but did not require other employees to use accrued sick or vacation time for other types of rest periods exceeding 15 minutes; and/or

175.    Defendants' demand that Deputy Moore's use accrued sick or vacation leave for lactation breaks exceeding 15 minutes deprived her of accruing sick or vacation leave to be available for other personal absences; and/or

176.    After her return to work on or about July 1, 2024, Defendants took one or more adverse employment actions against Deputy Moore by:

a.    Over-scrutinizing and/or intimidating Deputy Moore in her work performance including, but not limited to, by micromanaging her timely reporting to work, legitimate absences from work, and/or lactation breaks at work;

b.    Issuing Performance Reviews, reprimands, warnings, and/or other disciplinary action against Deputy Moore, including: the Performance Review, dated July 8, 2024, for calling in absent when her infant was awake throughout the night indicating that he might be ill; and/or the Performance Review, dated August 5, 2024, for refusing to bring her infant to the Jail for a physical defensive tactics training class and an additional alleged absence without accrued paid leave available;

c.    Denying Deputy Moore benefits of CCSO employment, including but not limited to, by specifically prohibiting her access to unpaid leave and/or prohibiting her from trading work shifts with co-workers;

**COMPLAINT AND DEMAND FOR JURY TRIAL- 27**

d.      Not investigating and/or providing adequate remedial action in response to Deputy Moore's complaints to CCSO supervisors and Human Resources staff about wrongful treatment relating to her exercise of rights protected by the PUMP Act; and/or

e.      Terminating Deputy Moore's employment on or about September 17, 2024.

177.    There is a causal connection between Deputy Moore engaging in one or more protected activities under the PUMP Act and Defendants' discriminatory and/or retaliatory adverse employment actions taken against her.

178.    CCSO is responsible for the violation of Deputy Moore's rights under the PUMP Act; and/or

179.    Sheriff Donahue, Lt. Donnelly and/or Sgt Thompson, acted, directly or indirectly, in the interest of CCSO in regard to and/or exercised supervisory authority over Deputy Moore such that they are responsible in whole or in part for the violation(s) of Deputy Moore's rights under the PUMP Act.

180.    As a result of Defendants' violations of the PUMP Act, Deputy Moore has suffered, and continues to suffer, emotional distress and economic damages in an amount to be proven at a trial in this action, and available equitable remedies.

181.    Deputy Moore seeks all available damages against Defendants, including but not limited to, lost back pay and benefits, lost future pay and retirement and other benefits, out of pocket costs, emotional distress and other compensatory damages, liquidated damages, available equitable remedies, and attorneys' fees and costs.

182.    Deputy Moore also seeks available punitive damages against Defendants because their actions were taken with malice or in reckless disregard of Deputy Moore's civil rights.

**COMPLAINT AND DEMAND FOR JURY TRIAL- 28**

## FIFTH CAUSE OF ACTION
### (42 U.S.C. § 1983: Violation of the Equal Protection Clause Under the Fourteenth Amendment, Against All Defendants)

183. The allegations contained in paragraphs 1 through 182 of this Complaint are incorporated herein by reference, as if set forth again in full.

184. Defendants Sheriff Donahue, Sergeant Thompson and Lt. Donnelly acted under color of state law in the acts or omissions regarding Deputy Moore identified herein.

185. Defendants are "persons" for purposes of suit against them under 42 U.S.C. § 1983.

186. Sheriff Donahue is an official policymaker for the CCSO Jail, where Deputy Moore was employed.

187. As to Deputy Moore's Section 1983 claim against CCSO, in committing the action(s) or failure(s) to act asserted herein below in violation of Deputy Moore's constitutional rights:

a. Defendants Sheriff Donahue, Sergeant Thompson and/or Lt. Donnelly acted pursuant to an expressly adopted CCSO official policy or a widespread or longstanding practice or custom of CCSO; and/or

b. Defendant Sheriff Donahue acted pursuant to his final policymaking authority for CCSO concerning the actions or failures to act regarding Deputy Moore and, when he engaged in such actions or failures to act, he was acting as a final policymaker for CCSO.

188. Defendants deprived Deputy Moore of legal rights protected by Equal Protection Clause under the Fourteenth Amendment to the United States Constitution, which prohibits discrimination in public employment on the basis of sex, by one or more of the following.

189. Defendants created, maintained and/or condoned a hostile work environment that subjected Deputy Moore to insulting, humiliating and/or discriminatory conduct related to her sex

COMPLAINT AND DEMAND FOR JURY TRIAL- 29

that was unwelcome and sufficiently severe and/or pervasive to alter the conditions of her employment and create an abusive working environment; and/or

190.    Defendants took, made or participated in decisions to take, directed subordinates to take or failed to take action to prevent subordinates from taking or ratified their actions, so as to be a moving force behind one or more adverse employment actions against Deputy Moore on the basis of her sex including, without limitation:

a.    Orders to Deputy Moore to use her accrued vacation and/or sick leave benefits for time on lactation breaks exceeding 15 minutes while permitting other CCSO employees to take paid personal breaks exceeding 15 minutes;

b.    Exposure of Deputy Moore to safety risks of direct physical access with inmates during pregnancy by denying her a temporary reassignment outside of Pod 6;

c.    The over-scrutinizing and/or intimidating of Deputy Moore in her work performance including, but not limited to, by micromanaging her timely reporting to work, legitimate absences from work, and/or lactation breaks at work;

d.    The issuance of Performance Reviews, reprimands, warnings, and/or other disciplinary action against Deputy Moore, including: the Performance Review, dated August 3, 2023, for arriving to work late due to severe morning sickness; the Performance Review, dated July 8, 2024, for calling in absent when her infant was awake throughout the night indicating that he might be ill; and/or the Performance Review, dated August 5, 2024, for refusing to bring her infant to the Jail for a physical defensive tactics training class and an additional alleged absence without accrued paid leave available;

**COMPLAINT AND DEMAND FOR JURY TRIAL- 30**

e.      The denial of benefits of CCSO employment to Deputy Moore, including but not limited to, by specifically prohibiting her access to unpaid leave and/or prohibiting her from trading work shifts with co-workers;

f.      Not investigating and/or providing adequate remedial action in response to Deputy Moore's complaints to CCSO supervisors and Human Resources staff about the wrongful treatment she was subjected to because of her sex; and/or

g.      The termination of Deputy Moore's employment on or about September 17, 2024.

191.    As a result of one or more of Defendants' unlawful actions, Deputy Moore has suffered, and continues to suffer, emotional distress and economic damages in an amount to be proven at a trial in this action.

192.    Plaintiff seeks all available damages against Defendants, including but not limited to, lost back pay and benefits, lost future pay and retirement and other benefits, out of pocket costs, emotional distress and other compensatory damages, and attorneys' fees and costs, and available equitable remedies.

193.    Deputy Moore also seeks punitive damages available under federal law against Defendants because their actions were taken with evil motive of intent or in reckless disregard or callous indifference for Deputy Moore's civil rights.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all triable counts, claims and issues in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

1.      Enter judgment in favor of Plaintiff and against Defendants;

2.      Back pay in an amount to be determined at trial;

**COMPLAINT AND DEMAND FOR JURY TRIAL- 31**

3.      Reinstatement, or front pay and lost retirement and other benefits;

4.      Compensatory (emotional distress) and consequential damages;

5.      Punitive damages available under applicable federal law;

6.      Pre-judgment and post-judgment interest at the highest lawful rate;

7.      Attorneys' fees and costs of this action, including expert witness fees; and

8.      Such further relief as justice allows.

DATED this 12th day of September 2025.

MACMASTER LAW, PLLC


/s/ Emily A. MacMaster
Emily A. MacMaster
Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL- 32**